IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| PHILLIP F.W. BEAZER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 123-126 |
| | ) | |
| RICHMOND COUNTY CONSTRUCTORS LLC; JAMES BISHOP; DELIAH ALEXANDER; NEIL BROACH; and JOHN STEVENS, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff commenced the above-captioned employment discrimination case *pro se* and is proceeding *in forma pauperis* ("IFP"). Because he is proceeding IFP, Plaintiff's amended complaint must be screened to protect potential Defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i) & (ii).

I.  SCREENING OF THE AMENDED COMPLAINT

    A.  BACKGROUND

Plaintiff, an African American male, was employed by Richmond County Constructors LLC ("RCC") from approximately July 1, 2019, to May 19, 2022. (Doc. no. 1,

pp. 6, 20.)  The Amended Complaint names the following defendants:  (1) RCC, (2) James Bishop, (3) Deliah Alexander, (4) Neil Broach, and (5) John Stevens.  (Doc. no. 5, pp. 2-3.)  Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On February 7, 2022, electrician and RCC employee John McQuade placed a swastika drawing under Plaintiff's lunchbox on his workplace table.  (Id. at 6, 19.)  Plaintiff reported the drawing to someone at RCC, though it is unclear when or to whom.  (Id. at 19.)  Mr. McQuade also "made threats that had [Plaintiff] in fear," though Plaintiff does not specify the dates or substance of these threats.  (Id.)

The following day, Plaintiff discovered a rope noose hanging from the ceiling of a Conex container.  (Id. at 6, 19-20, 25.)  Plaintiff was the only African American employee assigned to work in the Conex container.  (Id. at 6, 19.)  Plaintiff reported the noose to General Foreman Javil Peterson.  (Id. at 20.)  Mr. McQuade "admitted to hanging the noose and stated that he didn't think it was that big of a deal."  (Id.)

Plaintiff never experienced problems during his first year and a half working at RCC. (Id. at 15.)  However, on February 12, 2022, after Plaintiff complained about the swastika and noose, Defendant James Bishop moved Plaintiff to a new work location inside Building 184 and assigned Plaintiff responsibilities for which he knew Plaintiff had no training or work experience.  (Id. at 6, 17, 19.)  These new responsibilities included distribution of critical nuclear reactor parts, which requires close adherence to technical procedures.  (Id. at 17, 19.)

Furthermore, Mr. Bishop disabled Plaintiff's employee badge when he assigned Plaintiff to Building 184 on February 12, 2022, which resulted in Plaintiff being unable to

2

exit the plant to go to his vehicle during his lunch break that day. (Id. at 19.) Plaintiff felt as though Mr. Bishop "basically had [him] prisoner because [he] was unable to leave the plant" during lunch. (Id. at 18.) Plaintiff was only able to have his employee badge reinstated when he visited the security office the following day. (Id.)

On February 24, 2022, Defendant Neil Broach called Plaintiff to the plant security office, where officers placed him in an isolated room and questioned him about beer cans found in the trailer where he used to work with Mr. McQuade. (Id. at 10.) Plaintiff denied the beer cans were his, explained two other employees worked with him in the trailer, and pointed out the beer cans were found on the opposite end of the trailer from Plaintiff's work area. (Id.) Plaintiff was shaken as a result of this meeting. (Id.)

Defendant Deliah Alexander was Plaintiff's supervisor when he worked in Building 184. (Id. at 17.) On February 25, 2022, Plaintiff asked Ms. Alexander a question and she responded by "calling [him] names like stupid old dude in front of all [Plaintiff's] coworkers." (Id.) That same day, she discovered mistakes in work and yelled at Plaintiff "with more degrading words in front of [Plaintiff's] coworkers." (Id. at 16, 17.) When a coworker informed Ms. Alexander the work was not Plaintiff's, she did not apologize. (Id. at 16.) The workplace was hostile, isolating, and stressful. (Id.)

Early in the morning on March 3, 2022, while working in Building 130, Plaintiff heard Defendant Neil Broach, a general foreman, telling two union members "that these Travalers (sic) are in charge of desired positions," he had one "that he's dealing with" and that, if "they send him back to 184, he'll be dealt with." (Id. at 14.) Plaintiff believed these remarks were about him and feared for his physical safety. (Id.)

3

The next day, while Plaintiff was at the nurse's station in the medical building, Mssrs. Broach and John Stevens asked a nurse for a copy of Plaintiff's medical records. (Id.) Plaintiff objected and a nurse rejected the request. (Id.)

On March 5, 2022, Mr. Broach instructed Plaintiff to work in Building 130 instead of Building 184, explaining he did not want Plaintiff working in Building 184 because he never asked for Plaintiff to be placed there in the first instance. (Id. at 15.) Union stewards and human resources personnel became involved, and Plaintiff was ultimately returned to Building 184 by order of the President of RCC. Upon his return, a steward directed Plaintiff to sit in the break room until Mr. Broach directed Plaintiff to his work location. (Id.)

On March 6, 2022, as Plaintiff entered Building 184, he was handed a broom and told to sweep the mechanical room, a 20,000 square-foot facility. (Id. at 11.) While sweeping, Plaintiff's knees began to hurt, and he returned to the medical building. (Id.) Plaintiff sought medical treatment, and when Mr. Broach arrived to check on him, a physician explained Plaintiff could not climb ladders or stairs, kneel, or squat and must attend physical therapy twice a day, six days per week. (Id. at 13.) Despite having torn menisci in his knees, Plaintiff had to walk approximately one to two miles from Building 184 to the nurse's station for therapy. (Id.)

On March 8, 2022, in the presence of two other foremen, Mr. Broach informed Plaintiff his hours were being reduced to 50 per week with no overtime. (Id.) Plaintiff believed it was disrespectful for Mr. Broach to discuss the private details of his work hours in the presence of these two foremen. (Id.)

That same day, as Plaintiff returned from lunch around noon, Plaintiff was called into Defendant Stevens' office with two other African American coworkers. (Id. at 12.) Mr.

4

Stevens told them not to use their phones at work and this was their final warning. (Id.) Plaintiff, however, had not been on his phone, as he had been sitting in his car for lunch. (Id.) Mr. Stevens also prohibited them from going to their cars at lunch unless they obtained permission from a foreman. (Id.) Mr. Stevens did not include a Caucasian coworker in this meeting and Plaintiff believes Mr. Stevens included the other two African American employees to "not make it look so obvious [Mr. Stevens was] talking to [Plaintiff]." (Id.) Mr. Stevens gave Plaintiff these warnings at the direction of Mr. Bishop, in an effort to harass him. (Id.)

On March 21, 2022, Mr. Bishop approved Plaintiff's request for time off to attend a family event from April 18, 2022, through May 9, 2022. (Id. at 18.) However, when Plaintiff returned from this trip, he discovered Mr. Bishop had schemed by changing the outcome to denial of the leave request, which resulted in reduction of Plaintiff's work hours and putting his job in jeopardy. (Id.)

On a Sunday morning of unknown date, Mr. Broach made Plaintiff pick up trash around the outside of Building 184 and the surrounding yard from 7:00 a.m. until 1:15 p.m. (Id. at 11.) Plaintiff was the only employee assigned to this task, and he believes the purpose was to "insult [his] pride." (Id.)

Plaintiff also "suffered daily harassing treatment" by the Superintendent, General Foreman, and Foreman until he was laid off on May 19, 2022. (Id. at 6.)

On May 19, 2022, Foreman Mike, filling in for Mr. Stevens, informed Plaintiff he had been laid off and should report to the steward at Building 130. (Id. at 9.) Steward Seth Coit confirmed Plaintiff had been let go. (Id.) Plaintiff asked whether anyone else from Building 184 was let go and Mr. Coit replied no. (Id.) Human Resources Director Randy Ackridge

5

gave Plaintiff the paperwork and asked, "Beazer, aren't you glad you are leaving?" (Id.) Plaintiff was not anticipating this question and did not respond. (Id.) Mr. Ackridge then said that if it was him, he would be ecstatic to be leaving. (Id.) Plaintiff took his paperwork and left the workplace. (Id.)

Plaintiff filed a charge with the United States Equal Employment Opportunity Commission ("EEOC"). (See id. at 20.) The EEOC issued a right to sue notice on June 1, 2023, and Plaintiff's filing of this suit on September 5, 2023, appears timely. (Id. at 1); see also Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 148 & n.1 (1984) (*per curiam*).

### B. DISCUSSION

#### 1. Legal Standard for Screening

The amended complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, of if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. § 1915(e)(2)(B). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 327 (1989). Moreover, "[f]ailure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is,

"[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.  While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the defendant unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678.  A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557).  In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972); Erickson v. Pardus, 551 U.S. 89, 94 (2007).  However, this liberal construction does not mean that the court has a duty to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

> **2.    Plaintiff Fails to State a Claim Against Defendants Bishop, Alexander, Broach, and Stevens Because There is No Individual Capacity Liability Under Title VII**

Plaintiff has brought his Title VII claims against Defendants Bishop, Alexander, Broach, and Stevens, in addition to RCC, his past employer.  (See generally doc. no. 5.)  However, the relief granted under Title VII is against the employer, not individual employees who violated the Act. Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir. 1991).  Thus, individual capacity suits under Title VII are inappropriate, and the only proper defendant in a Title VII suit is the employer or supervisory employees in their official capacities as agents of the employer. Id.

Moreover, to the extent Plaintiff names Defendants Bishop, Alexander, Broach, and Stevens in their official capacities as supervisory employees, his claims are redundant because he has already named the employer, RCC. Busby, 931 F.2d at 776; Wheeles v. Nelson's Elec. Motor Servs., 559 F. Supp. 2d 1260, 1267 (M.D. Ala. 2008) ("However, when a plaintiff names both the employer and the individual supervisor in his official capacity, the supervisor may be dismissed from the action."). Thus, Plaintiff's Title VII claims against these Defendants in either capacity are inappropriate or redundant and Defendants Bishop, Alexander, Broach, and Stevens should be dismissed from this case.

## II.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Plaintiff's claims against Defendants Bishop, Alexander, Broach, and Stevens be **DISMISSED** for failure to state a claim. In a companion Order, the Court allows Plaintiff's claims against RCC to proceed.

SO REPORTED AND RECOMMENDED this 2nd day of October, 2023, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA